*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

 *Plaintiff-Appellee,*

 *v.*

KENNETH HEATH,

 *Defendant-Appellant.*

No. 07-1215

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-81115—George C. Steeh, District Judge.

Argued: April 23, 2008

Decided and Filed: May 19, 2008

Before: CLAY and GILMAN, Circuit Judges; SCHWARZER, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Sidney Kraizman, KRAIZMAN & KRAIZMAN, Detroit, Michigan, for Appellant.
Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for
Appellee. **ON BRIEF:** Sidney Kraizman, KRAIZMAN & KRAIZMAN, Detroit, Michigan, for
Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan,
for Appellee.

---

**OPINION**

---

 RONALD LEE GILMAN, Circuit Judge. Kenneth Heath was charged with four counts of
attempting to evade the payment of federal income taxes between 1999 and 2002, and with two
counts of presenting fictitious financial instruments. Heath argues on appeal that the district court
committed reversible error by (1) refusing to instruct the jury that the government was required to
prove that he owed a "substantial" amount of federal income tax, (2) failing to clarify for the jury
that it could not find him guilty on a particular count unless his allegedly unlawful conduct was
willful as to that count, and (3) erroneously stating in the jury instructions that a fictitious financial
instrument must be "free of disqualifying *remarks*" as opposed to "disqualifying *marks*." He also
asserts that the district court erred at sentencing by using the wrong standard when denying him a

---

 [*] The Honorable William W Schwarzer, United States District Judge for the Northern District of California,
sitting by designation.

downward departure for diminished capacity under the United States Sentencing Guidelines (U.S.S.G.). For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Heath is a design engineer and a graduate of California Polytechnic University. He was 69 years old at the time of his trial. In 1993, Heath became involved with tax-protester groups and stopped paying his federal income taxes. He was inspired to stop paying taxes after attending seminars conducted by Irwin Schiff, a convicted tax evader who wrote a book while in prison titled "Federal Mafia: How it Illegally Imposes and Unlawfully Collects Income Taxes." The book advises readers how to not pay taxes, but informs them that they run the risk of conviction if they follow the book's advice.

Although Heath lived in Imlay City, Michigan in 1993, he began filing federal income tax returns that showed him living in the "California Republic." In 1998, the Internal Revenue Service (IRS) deemed Heath's tax returns "frivolous" and informed him of that determination. The IRS told Heath in a letter that he could refile proper tax returns without paying a frivolous-return penalty. Heath instead proceeded to send the IRS more than 100 written communications asserting that he was not subject to federal income tax and refusing to refile in a legal manner. In one letter he explained his refusal by stating that as a "private sector wage earner . . . he is not . . . a corporation . . .[;] we are sovereign natural born persons." He also filed more than 30 improper revised tax returns and received a $500 penalty for each return. In total, Heath was assessed penalties of more than $45,000 for improper and frivolous filings.

The government eventually charged Heath with tax evasion for the years 1999-2002. During that time period, Heath was employed by Aeroteck as an automotive engineer and by Continental Chivas, a manufacturer of automobile parts. Although Heath filed tax returns between 1999 and 2002 that disclosed his income, he paid no taxes because he claimed to be "exempt" on his W-4 tax forms. His employers therefore withheld no taxes from his paychecks. Heath also failed to pay taxes on money he received from a trust fund during that same time period. The IRS calculated that Heath owed the government $12,823 for 1999, $12,404 for 2000, $9,732 for 2001, and $2,231 for 2002. In total, the amount of unpaid tax due and owing the government between 1999 and 2002 came to $37,190.

The IRS responded to Heath's numerous communications during that time period by advising him that his arguments for not paying taxes were without legal merit and had never been successful in federal court. In addition, the letters informed Heath that he could be subject to criminal penalties for the willful failure to pay. The IRS eventually sent a tax levy for back taxes to Heath's employers and to the manager of his trust, Dennis Jacobs. Heath then engaged a group called "American Rights Litigators" to help him with his tax problems. Jacobs received a letter from an attorney for American Rights Litigators who claimed to be acting under a power of attorney from Heath. The letter informed Jacobs that he was not authorized to honor the IRS levy against Heath's trust because of alleged defects in "the process of the IRS." Jacobs, however, continued to pay trust funds to the IRS in accordance with the levy. Heath then transferred his interest in the trust to his sister.

American Rights Litigators also advised Heath that he could pay his tax debt with a registered "Bill of Exchange." A Bill of Exchange is a written order by one person to another, signed by the person giving the order, requiring a third party (the drawee) to pay a stated amount on demand. Black's Law Dictionary 164 (6th ed. 1990). The most common type of Bill of Exchange is a personal check associated with a bank checking account. Heath went to another organization, "Guiding Light of God Ministries," for assistance with the paperwork required for securing a Bill of Exchange to pay the IRS. At trial, Heath explained that he understood that a Bill of Exchange was a "set off" where "you can ask the Secretary of the Treasury to set up an account

for you for the IRS, send this bill to the accountant and the bill off to the bankruptcy in the United States, and they promise to pay the debt, and it is all in the master plan, whatever is in the 1933 bankers act. . . ."

A paragraph at the bottom of the sample Bill of Exchange that Heath received from Guiding Light of God Ministries stated that

> assisting our patrons with the preparation of UCC filing, Bills of Exchange, and other papers may not always be appreciated by those in government agencies . . . due to a lack of understanding or otherwise. Though we do not advocate or prepare documentation that is unlawful, use of Bills of Exchange may result in a phone call or a visit from the IRS and/or treasury personnel alleging that the Bills of Exchange are fraudulent instruments, even though current Bills of Exchange specifically state on them 'void where prohibited by law.' Several patrons have experienced this recently.

In August or September of 2003, Heath sent to the IRS what appeared to be a certified check in the form of a "Registered Bill of Exchange" in the amount of $88,997.38. The document contained a statement in the fine print that it was "Void where prohibited by law." Heath sent a second Bill of Exchange in December of that year for $20,297.82. It had the words "not negotiable" printed on the document. Both of the Bills of Exchange offered by Heath identified the drawee as "John W. Snow, Trustee," and showed his address at the Department of the Treasury. William Kerr, an employee with the bank-fraud division of the Office of the Comptroller of the Currency, explained at trial that the Bills of Exchange offered by Heath were fictitious instruments because they "d[id] not exist in the legitimate financial record." In other words, there was no real account for payment of the documents. Kerr also explained that the supposedly Registered Bills of Exchange offered by Heath looked like genuine financial instruments but were in fact fictitious.

A grand jury indicted Heath in December of 2005, charging him with four counts of attempting to evade and defeat the payment of federal income tax, in violation of 26 U.S.C. § 7201, and with two counts of presenting fictitious financial instruments, in violation of 18 U.S.C. § 514(a)(2). At the conclusion of the trial, the district court granted Heath's motion, filed pursuant to Rule 29 of the Federal Rules of Criminal Procedure, to dismiss the charge relating to the December 2003 Bill of Exchange. The court concluded that the document did not qualify as a fictitious financial instrument within the meaning of the statute because the face of the document stated that it was "not negotiable." A jury convicted Heath on the other five counts.

After the jury verdict, Heath's counsel filed an ex parte motion for authorization to obtain the services of a psychologist, Dr. Michael Abramsky, to examine Heath for the purpose of determining if he had "diminished capacity" as defined under § 5K2.13 of the 2002 Sentencing Guidelines. The district court granted the motion. After Dr. Abramsky interviewed Heath in October of 2006, he issued a report concluding that Heath did not suffer from major psychosis. But Dr. Abramsky found that Heath did have "cognitive slippage, which is likely a sign of a pre-demented state," and that Heath was chronically depressed.

Under the "legal conclusion" section of his report, Dr. Abramsky stated that although Heath was not insane and that his "reality testing" was adequate, there were "elements of diminished capacity." Dr. Abramsky concluded by stating: "I believe a downward departure is justified. This man is deteriorating, he is likely to get worse since such dementia is generally progressive and it appears that his mental state did make a significant contribution to the decisions he made, which ultimately led to his conviction and incarceration." The doctor's report was submitted to Heath's probation officer and to the district court. At sentencing, Heath's counsel requested a U.S.S.G. § 5K2.13 downward departure for diminished capacity.

Although the district court discussed Dr. Abramsky's report, it found that Heath did not have diminished capacity at the time of the offense or at sentencing. The court specifically determined that Heath's trial testimony and his behavior at trial indicated that he could reason appropriately, that neither the court nor the jury found that Heath had a good faith belief in the lawfulness of his behavior, and that Heath's mental difficulties did not suggest "an inability on his part to comply with legal requirements." It then denied the request for a downward departure and sentenced Heath to five concurrent terms of 21 months of imprisonment. This timely appeal followed.

## II.    ANALYSIS

### A.    Jury instructions

We review the jury charge as a whole to determine whether the charge fairly and adequately submits the issues and law to the jury. *United States v. Buckley*, 934 F.2d 84, 87 (6th Cir. 1991). "A trial court's refusal to give a requested jury instruction is reversible error only if the instruction is (1) correct, (2) not substantially covered by the actual jury charge, and (3) so important that failure to give it substantially impairs defendant's defense." *United States v. Sassak*, 881 F.2d 276, 279 (6th Cir. 1989). We will therefore reverse a judgment based on a claim of error "only if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993).

#### 1.    *Jury charge omitting instruction that "substantial" tax was due and owing*

At trial, Heath objected to the district court's jury charge describing the elements of tax evasion under 26 U.S.C. § 7201. He contended that the government had to prove that a "substantial" amount of tax was due and owing for each count of tax evasion. In support of his position, Heath relied on the model jury instructions contained in 2B Kevin F. O'Malley et al., Federal Jury Practice And Instructions: Criminal § 67.03 (5th ed. 2000), which in turn cites a Sixth Circuit decision, *United States v. Burkhart*, 501 F.2d 993, 995 (6th Cir. 1974), that uses the term "substantial" when discussing § 7201.

The government disagreed with Heath, contending that the language of the statute simply requires proof that "any tax" is due and owing. Agreeing with the government, the district court denied Heath's request to insert the word "substantial" into the jury instructions. The final jury instruction on this point read as follows: "One element of attempted tax evasion is *an amount* of federal tax due and owing by the defendant for the years in question." (Emphasis added.).

The government correctly points out that the language of the statute under which Heath was charged does not contain a substantiality requirement. Section 7201 provides as follows: "Any person who willfully attempts in any manner to evade or defeat *any tax* imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . ." (Emphasis added.). The elements of §7201 are limited to "willfulness; the existence of a tax deficiency; and an affirmative act constituting evasion or attempted evasion of the tax." *United States v. DeNiro*, 392 F.2d 753, 758 (6th Cir. 1968) (quoting *Sansone v. United States,* 380 U.S. 343, 351 (1965) (citations omitted)); *see also United States v. Marashi*, 913 F.2d 724, 735 (9th Cir. 1990) ("The language of § 7201 does not contain a substantiality requirement. It simply states that willful attempts to evade 'any tax' under the tax Code is a felony.").

In some circumstances, however, such as where the amount of tax owed the government is in dispute and the government relies on a "net worth" theory to prove the amount of tax due, a number of courts have held that a substantiality instruction is necessary. The model instructions cited by Heath recommend that the phrase "substantial tax" be inserted into the first element of the offense, at least when the government employs a net worth theory of proof, and note that "most

circuits require the Government to prove that the amount of the tax evaded was substantial." 2B Kevin F. O'Malley, Fed Jury Prac. & Inst. § 67.03.

Use of the net worth method to establish tax liability is employed where the government "is unable to offer direct evidence that tax was underpaid because the taxpayer's books and records are falsified, incomplete, or indecipherable." Beth Bates, Annotation, *Sufficiency of Government's Proof of Taxpayer's Beginning Net Worth in Felony Prosecution for Income Tax Evasion, Under 26 U.S.C.A. § 7201 or its Predecessor, Relying on "Net Worth" Method*, 102 A.L.R. Fed. 644 (1991). Where there is insufficient direct evidence of tax liability in the form of proper tax records, the government must rely on circumstantial evidence to prove the taxpayer's taxable but unreported income during the years in question. *Id.* Because the Supreme Court has suggested that the net worth method of proof is "fraught with danger for the innocent," *Holland v. United States*, 348 U.S. 121, 125 (1954), some circuits have held that where the net worth method is used to prove the amount of tax owed, the phrase "substantial tax" must be included as part of the first element of § 7201. *See United States v. Sorrentino*, 726 F.2d 876, 879 (1st Cir. 1984) (holding that where the government uses a net worth theory to prove the amount of tax a defendant owes, the government must prove that the increase in the defendant's net worth for each year in question exceeded his reported taxable income by a substantial amount).

The model instructions acknowledge, however, that substantiality is not an element of § 7201, and cite numerous Sixth Circuit cases that define the elements of § 7201 consistent with the instructions given in the case before us. *See* 2B Kevin F. O'Malley, Fed Jury Prac. & Inst. § 67.03; *see also United States v. Daniel*, 956 F.2d 540, 542 (6th Cir. 1992) (holding that "when [the defendant] failed to file his federal income tax return, and the government determined his tax liability, a tax deficiency arose by operation of law, fulfilling the tax deficiency element of section 7201"); *United States v. Reed*, 821 F.2d 322, 325 (6th Cir. 1987) (stating that the requirement for deficiency is met if taxes owed are more than zero).

In the present case there was no dispute at trial over the amount that Heath owed in unpaid taxes. The government knew what Heath's tax liability was for the years in question because Heath filed annual tax returns that reported his income. His liability arose not from unreported income, but from his decision to claim that he was exempt from paying taxes on what he reported. Furthermore, Heath never contended that the amount stated as due and owing by the government was incorrect. He instead argued that his failure to pay taxes on his stated income was not willful because he had a "good faith belief" that he was not obligated to pay taxes to the United States Government. We therefore conclude that the district court did not err in refusing to include the term "substantial" in the jury instructions, even if we assume that such is required when the government uses a net worth theory of proof to establish the amount of unpaid income tax. *See United States v. Burkhart*, 501 F.2d 993, 995 (6th Cir. 1974) (holding that the government was required to prove "a substantial understatement" of income in a case where it used the net worth method to establish the defendant's tax liability).

### 2. *Jury charge on willful conduct*

Heath also argues that the district court erroneously informed the jury that it was *not* required to find that Heath's conduct was "willful" for each year charged in the indictment. Although Heath is correct in noting that the court originally misspoke while giving the jury instructions, the mistake was immediately corrected when the court accurately stated that the jury was "required to find that the defendant's conduct was willful in each year charged" in order to find him guilty. The court specifically instructed the jury as follows: "You're reminded that you are not required to—excuse me. You're reminded that you are required to find the defendant's conduct was willful in each year charged in the indictment." Because the court instantly corrected its mistake, the jury was properly

charged on the willfulness element of the crime of tax evasion. Heath's argument on this issue is therefore without merit.

### 3.　*Jury charge on the offense of presenting a fictitious financial instrument*

Heath's third challenge to the jury charge relates to his conviction for presenting a fictitious financial instrument (i.e., the August 2003 Bill of Exchange) to the IRS in the amount of $88,997.38, in violation of 18 U.S.C. § 514(a)(2). His contention is that the statement in the left hand corner of the Bill of Exchange that the document was "Void where prohibited by law" was a disqualifying mark and that the jury was improperly instructed on whether a document with such a mark qualified as a fictitious financial instrument as defined in § 514(a)(2).

Section 514(a)(2) makes it a felony to pass, present, offer, or issue with the intent to defraud "any false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States, a foreign government, a State or other political subdivision of the United States, or an organization[.]"

In *United States v. Anderson*, 353 F.3d 490 (6th Cir. 2003), this court adopted the following definition of a fictitious instrument as articulated in *United States v. Howick*, 263 F.3d 1056, 1067 (9th Cir. 2001): "[A] 'fictitious' obligation is a bogus document contrived to appear to be a financial instrument, where there is in fact no such genuine instrument, and where the fact of the genuine instrument's nonexistence is presumably unknown by, and not revealed to, the intended recipient of the document."

The *Anderson* court also adopted *Howick's* definition of the phrase "actual security or other financial instrument" as "one that appears to be 'actual' in the sense that it bears a family resemblance to genuine financial instruments" or "include[s] enough of the various hallmarks and indicia of financial obligations so as to appear to be within that class." *Anderson*, 353 F.3d at 500. This point was elaborated on in *Howick* with the comment that "the document need only credibly hold itself out as a negotiable instrument" and be "free of disqualifying marks, such as for example, a statement that the document is not negotiable." 263 F.3d at 1068, 1069.

In reading the instructions to the jury, the district court told the jurors to consider whether the document was free of "disqualifying *remarks*" as opposed to "disqualifying *marks*." Because Heath did not object at trial to the language in the charge for fictitious instruments, we review the instruction under the plain-error standard. *See United States v. Blood*, 435 F.3d 612, 625 (6th Cir. 2006). An appellate court may correct an error not raised at trial if the error is obvious, affected the substantial rights of the defendant (i.e., caused actual prejudice), and seriously affected "the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 735-36 (1993).

The district court in the present case instructed the jury on fictitious instruments as follows:

A fictitious instrument is a bogus document contrived to appear to be a financial instrument, and where the fact of the genuine instrument's nonexistence is presumably unknown by, and not revealed to, the intended recipient of the document. Fictitious instruments include even bogus instruments that a prudent person might upon consideration be unlikely to accept as genuine, so long as those documents bear a family resemblance to actual financial obligations.

The question is whether the document's features are among those commonly found in genuine obligations as well as whether it is free of disqualifying remarks. To

trigger liability, the document must credibly hold itself out as [a] negotiable instrument.

The government is not required to prove that the defendant actually obtained goods or services using the false of fictitious financial instrument, or that the false or fictitious financial instrument was similar to a genuine financial instrument. However, the government must prove that the false or fictitious instrument appeared to be within the class of genuine financial instruments.

Because the district court properly defined both a "fictitious instrument" and an "actual security or other financial instrument" according to this circuit's case law in *Anderson*, it accurately and sufficiently defined the elements of the charge under § 514(a)(2). *See Anderson*, 353 F.3d at 500-01. The court's mistake in using the term "remarks" rather than "marks" did not relate to an element of the offense, nor was it so misleading as to create confusion as to the elements in the statute. As a result, Heath has failed to establish that the court's error seriously affected "the fairness, integrity or public reputation of judicial proceedings." *See Olano*, 507 U.S. at 735-36. We therefore find that the district court did not commit plain error regarding this instruction.

## B.     Sentencing

The final issue that Heath raises on appeal relates to his sentence. He argues that in denying his request for a downward departure, the district court mistakenly applied Michigan's definition of legal insanity rather than the lower standard for diminished capacity contained in U.S.S.G. § 5K2.13. We do "not review decisions of a district court not to depart downward unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005) (internal quotation marks omitted). The district court's sentencing determination, however, is reviewed for reasonableness, which has both a procedural and a substantive component. *Gall v. United States*, 128 S. Ct. 586, 597 (2007); *United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007).

Although Heath does not assert in his briefs that he is challenging the reasonableness of his sentence, his argument that the district court applied the wrong standard for diminished capacity may be interpreted as a challenge to the sentence's procedural reasonableness. To determine if a sentence is procedurally reasonable, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, . . . failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 128 S. Ct. at 597.

Section 5K2.13 of the 2002 edition of Guidelines provides that "[a] sentence below the applicable guideline may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity." The commentary in Application Note 1 states: "For purposes of this policy statement—'Significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."

Heath argues that the district court erroneously applied the heightened requirements for legal insanity under Michigan law rather than the more lenient standard for a "significantly reduced mental capacity" under U.S.S.G. § 5K2.13. Michigan's Criminal Jury Instructions state that a defendant may be legally insane if, "because of his mental illness[, the defendant] lacks substantial capacity either to appreciate the nature and quality of the wrongfulness of his conduct or to conform his conduct to the requirements of the law." Michigan Criminal Jury Instruction, 2d (CJI2d) § 7.11.

Although the Michigan requirements to establish legal insanity are indeed stricter than the standard under U.S.S.G. § 5K2.13, the record indicates that the district court properly applied the Guidelines standard. In discussing Heath's mental state, the district court explicitly stated that it was applying the Guidelines test for diminished capacity and made clear that it was evaluating Dr. Abramsky's findings in the context of the "standard in the guideline range." The court then analyzed Heath's mental capacity against the Guidelines test of whether Heath had a significantly impaired ability to understand either the wrongfulness of the behavior or to control that behavior. U.S.S.G. § 5K2.13.

First, the district court determined that Heath had "demonstrated during the course of the trial that he had sufficient functioning to understand and appreciate the wrongfulness of his behavior," and that neither the court nor the jury found that Heath had a good faith belief in the lawfulness of his behavior. To support its finding, the court noted that Heath admitted that he knew that he was relying on books and advice from an individual who has served jail time for the same offenses with which Heath was charged, that Heath's testimony at trial was well organized, and that Heath responded appropriately to questions on cross-examination. The court then concluded that Heath's mental difficulties did not suggest "an inability on his part to comply with legal requirements."

Heath's mental problems were therefore properly assessed on the basis of whether he had a significantly impaired ability to either understand or control his wrongful behavior, as required by U.S.S.G. § 5K2.13. Because the record does not support Heath's conclusory allegation that the district court misunderstood or misapplied these requirements, we find that his argument is without merit.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.