19-95
*United States v. Jones*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2019

(Argued: May 27, 2020                    Decided: July 16, 2020)

Docket No. 19-95

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

BRANDON JONES, AKA Brandon McGeer, AKA Brandon Jones-McGeer,

*Defendant-Appellant*.

_____

Before: POOLER, LYNCH, and MENASHI, *Circuit Judges*.

Brandon Jones appeals from the judgment of conviction entered in the United States District Court for the Southern District of New York (Alison J. Nathan, *J.*) for the use of "false or fictitious" government financial documents, in violation of 18 U.S.C. §§ 514 and 2. Jones acknowledges that he used fake

government transportation requests and purchase orders but argues that there is insufficient evidence to support his conviction because Section 514 criminalizes only the passing of fictitious types of documents, not the passing of counterfeit, or fake, versions of genuine types of documents.

We hold that the term "false or fictitious" as used in 18 U.S.C. § 514 refers to both wholly contrived types of documents or instruments and fake versions of existing documents or instruments. Therefore, the evidence was sufficient to support Jones's conviction.

Affirmed.

———————————————

LUCAS ANDERSON, Rothman, Schneider, Soloway & Stern, LLP, New York, NY, *for Defendant-Appellant Brandon Jones*.

KIERSTEN A. FLETCHER, Assistant United States Attorney (Jessica Fender, Tara LaMorte, Daniel B. Tehrani, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

POOLER, *Circuit Judge*:

Brandon Jones appeals from the judgment of conviction entered in the United States District Court for the Southern District of New York (Alison J. Nathan, *J.*) for the use of "false or fictitious" government financial documents, in violation of 18 U.S.C. §§ 514 and 2. Jones acknowledges that he used fake government transportation requests and purchase orders but argues that there is insufficient evidence to support his conviction because Section 514 criminalizes only the passing of fictitious types of documents, not the passing of counterfeit, or fake, versions of genuine types of documents.

We hold that the term "false or fictitious" as used in 18 U.S.C. § 514 refers to both wholly contrived types of documents or instruments and fake versions of existing documents or instruments. Therefore, the evidence was sufficient to support Jones's conviction.

## BACKGROUND

On February 8, 2019, Jones was indicted for one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2; one count of conspiracy to commit wire

fraud in violation of 18 U.S.C. § 1349; and one count of use of fictitious government documents in violation of 18 U.S.C. §§ 514(a)(2) and 2.

At trial, the Government's evidence established the following. As early as 2010, Jones created a nongovernmental organization ("NGO") titled the "Office of the Commissioner for Burns,"[1] which he later represented, falsely, as an "international governmental organization" (which he abbreviated as "IGO") affiliated with the United Nations. Jones styled himself as the "Commissioner and Head of Delegation." He often used badges and other identifying documents purportedly from the United Nations. The United Nations did not recognize Jones's organization as an intergovernmental organization and barred Jones from its premises in 2014. At no time during the relevant period was Jones a member or delegate of the United Nations, an employee of either the United Nations or the United States Department of State, or a person with recognized diplomatic status.

While playing this role, Jones submitted false government transportation requests ("GTRs") and purchase orders to various companies. For instance, an

---

[1] Sometimes Jones used the title "Office of the Commissioner."

internal investigation conducted by American Airlines showed that Jones used false GTRs to pay the airline for tickets valuing a total of $100,417.89 over several years. These contrived GTRs had "Office of the Commissioner, An IGO" across the top of the document and included the address of the United Nations headquarters in New York. Supp. App'x at 8. An American Airlines employee testified that during one encounter, Jones presented her with a typed-up white sheet of paper reading "Governmental Transportation Request." App'x at 47.

GTRs are legitimate government forms, still used by federal employees, though less often since the introduction of government-issued credit cards. Unlike the GTRs tendered by Jones, authentic GTRs are issued only by the General Services Administration ("GSA") to authorized federal or quasi-governmental agencies, a category that does not include the United Nations. Legitimate GTRs are either blue and white documents with the words "U.S. Government Transportation Request" at the bottom of the document, Supp. App'x at 47, or white documents containing the words "U.S. Government Transportation Request" at the top, Supp. App'x at 48. The blue and white GTRs were used before 2013, and the white GTRs have been used since 2013. No entity's logo or header appears on either version of the legitimate GTRs. Trial

testimony established that none of the GTRs used by Jones were issued by the federal government.

The Government also proffered evidence regarding Jones's use of false purchase orders with various entities ranging from the UPS Store to Apple. For example, Jones used a purchase order for $9,000 to rent a car through Enterprise Rent-A-Car in November 2013. He also used a purchase order to rent a corporate apartment in 2015. This purchase order was authorized and signed by someone named Sandra Zongo, who purported to be the "Dep. Comm. For Foreign Affairs." Supp. App'x at 5. Like the GTRs, the purchase orders purported to relate to the "Office of the Commissioner for Burns, an IGO" of the "United Nations." Supp. App'x at 6. The purchase orders are single-page documents that also contain the words "Purchase Order" in outsized font at the top of the page, either across the middle or in the right corner, along with Jones's organization's logo. Supp. App'x at 5-6.

The Government introduced into evidence legitimate purchase orders, which are white documents that say "Solicitation/Contract/Order for Commercial Items" in the top left-hand corner. Supp. App'x at 52. The legitimate purchase orders are two-page documents. No entity's logo is located on the

document. The official documents contain numerous spaces for entries missing from Jones's documents as well, such as various codes. A GSA employee testified that the purchase orders used by Jones were not authentic.

The district court, in relevant part, instructed the jury that a false or fictitious document "is a bogus financial document made to look like a real financial document which could be used for payment when, in fact, there is no such genuine financial instrument." App'x at 257. The jury convicted Jones on all counts, and the district court sentenced him to principally 50 months' imprisonment followed by five years' supervised release.

Jones timely appealed.

## DISCUSSION

We review challenges to the sufficiency of the evidence de novo. *United States v. Taylor*, 816 F.3d 12, 22 (2d Cir. 2016). "A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." *Id.* (citation omitted). "A judgment of acquittal can be entered only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

18 U.S.C. § 514(a)(2) prohibits the passing, uttering, presenting, offering, brokering, issuing, selling, attempting or causing the same, or possessing, with intent to defraud, "any false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States, a foreign government, a State or political subdivision of the United States, or an organization."

Jones's sufficiency-of-the-evidence argument turns on what properly constitutes a "false or fictitious" instrument or document for purposes of Section 514. Jones argues that the term applies only to nonexistent or virtually nonexistent types of documents or instruments. In other words, Jones asserts that Section 514 criminalizes only the use of fake documents or instruments that purport to be entirely contrived or extremely rare types of financial instruments. As a result, he argues that there is insufficient evidence that he passed "false or fictitious" documents because the evidence at trial established that legitimate GTRs and purchase orders do exist and are used by the government. Jones's

8

interpretation of Section 514 is the same interpretation reflected in both parties' requested jury instructions, the jury instructions given by the district court, and the Government's position on appeal. For the reasons set forth below, however, we believe that that instruction was overly favorable to Jones.

## I.  The Meaning of "False or Fictitious"

We cannot agree with Jones's interpretation. "This case begins, and pretty much ends, with the text" of Section 514. *See Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 (2020). "Our starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000). Section 514 covers the use of "false *or* fictitious" instruments or documents. 18 U.S.C. § 514 (emphasis added). "The statute's use of the disjunctive 'or' within the phrase 'false or fictitious instrument' calls for some distinction to be made between a false instrument and a fictitious one." *United States v. Williams*, 790 F.3d 1240, 1246 (11th Cir. 2015); *see also United States v. Harris*, 838 F.3d 98, 105 (2d Cir. 2016) (explaining that canons of statutory interpretation "ordinarily suggest that terms connected by a disjunctive be given separate meanings" (internal quotation marks and citation omitted)).

That "false" and "fictitious" do not share a plain meaning also indicates that the two terms should be treated distinctly. "False" is defined as "not genuine." *False*, Merriam-Webster, https://www.merriam-webster.com/dictionary/false (last visited July 15, 2020). "Fictitious" is defined as "of, relating to, or characteristic of fiction," which in turn is defined as "something invented by the imagination or feigned." *Fictitious*, Merriam-Webster, https://www.merriam-webster.com/dictionary/fictitious (last visited July 15, 2020); *Fiction*, Merriam-Webster, https://www.merriam-webster.com/dictionary/fiction (last visited July 15, 2020). Thus, "Section 514's use of the disjunctive 'or' indicates that the statute contemplates documents that are not 'fictitious' since they purport to be a type of instrument that actually exists, but are still 'false' in the sense that they are wholly inauthentic." *Williams*, 790 F.3d at 1246.

This conclusion is additionally supported by the canon against surplusage, which requires courts to "construe statutes in a manner that gives effect to all of their provisions." *Hayward v. IBI Armored Servs.*, 954 F.3d 573, 576 (2d Cir. 2020); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013). Jones's interpretation of "false or fictitious" as referring only to purely contrived types of documents

10

and instruments "would render the term 'false' mere surplusage," *Williams*, 790 F.3d at 1246, because "fictitious" already encompasses purely contrived categories of obligations.

Finally, as the Eleventh Circuit observed, the statutory definitions incorporated by reference in Section 514 further undermine Jones's preferred interpretation. *Id*. The statutory definition of "security," for instance, includes financial instruments such as checks, bonds, and other existent and commonly used obligations. 18 U.S.C. § 513(c)(3). In light of this definition, Jones's argument that Section 514 criminalizes the passing of fake versions of only nonexistent or extremely rare types of documents or instruments conflicts with the statute itself.

Jones relies heavily on the Ninth Circuit's decision in *United States v. Howick*, 263 F.3d 1056 (9th Cir. 2001).[2] Relying on legislative history, the Ninth Circuit explained that Section 514 "was intended to criminalize a range of behavior not reached by [18 U.S.C. §] 472," which is the federal counterfeit statute. *Id*. at 1066. The Ninth Circuit explained that it "interpret[s] the phrase

---

[2] Other circuits, including the Fifth, Sixth, and Eighth Circuits, have adopted the Ninth Circuit's definition. *See, United States v. Heath*, 525 F.3d 451, 458 (6th Cir. 2008); *United States v. Morganfield*, 501 F.3d 453, 459-60 (5th Cir. 2007); *United States v. Getzschman*, 81 F. App'x 619, 622 (8th Cir. 2003).

'false or fictitious instrument' in section 514 to refer to nonexistent instruments, whereas the phrase 'falsely made, forged, counterfeited, or altered obligation' in Section 472 refers to doctored up versions of obligations that truly exist." *Id.* at 1067. We are not persuaded and see no reason to examine legislative history. "When the plain language and canons of statutory interpretation fail to resolve statutory ambiguity" we turn to legislative history. *Dauray*, 215 F.3d at 264. But here, the plain language and canons of statutory interpretation make clear, for the reasons discussed above, that "false or fictitious" means either "false" or "fictitious."[3]

---

[3] Even if we did consider the legislative history, we are not convinced that it mandates a different conclusion. Section 514 was intended to "close[] a loophole in Federal counterfeiting law," which was caused by "fictitious instruments [that] are not counterfeits of any existing negotiable instrument," which "Federal prosecutors have determined . . . do not violate the counterfeit or bank fraud provisions." 141 Cong. Rec. S9533-34 (1995). Congress can close loopholes either by creating a narrow-gauge statute that addresses only one particular situation that the earlier statute missed, or by writing a more capacious statute that covers a broader variety of conduct than the original statute. It sometimes chooses the latter course, even when some overlap or duplication results. Here, Congress did not simply add a new prohibition on "fictitious" instruments or define that term to mean purported government obligations that do not correspond to any real document at all; rather, it enacted a prohibition that covered all kinds of "false" or "fictitious" documents.

## II. The Sufficiency of the Evidence

Having determined that Section 514 applies to fake versions of existing types of documents or instruments, we have little trouble concluding that the evidence was sufficient to support Jones's conviction. The record is replete with evidence establishing that Jones passed inauthentic GTRs and purchase orders. For example, Jones gave an American Airlines representative a "typed up . . . white sheet of paper, saying Governmental Transportation Request." App'x at 47. An internal investigation by American Airlines revealed that the document, like all the GTRs Jones had submitted, was false. Indeed, Jones represented that he worked for a fictitious entity associated with the United Nations, but the United Nations is not authorized to issue or use GTRs. Similarly, Jones rented cars and apartments that were paid for with fake purchase orders. Thus, there is

---

Moreover, to adopt Jones's interpretation would leave open a different loophole for false documents like Jones's, which also arguably "do not violate the counterfeit or bank fraud provisions." Section 472, the counterfeit statute, has a "similitude requirement." *See Howick*, 263 F.3d at 1067. Instruments such as Jones's, which actually exist but are so markedly different from the actual instruments as to fail that requirement, would also fall within the loophole in Section 472. In the face of statutory text that clearly covers such instruments, we see no reason to seize upon legislative history reflecting an intention to close loopholes as a basis to distort the plain meaning of the text to create or perpetuate precisely such a loophole.

13

ample evidence to support the jury's finding that Jones passed false or fictitious documents in violation of Section 514.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of conviction.