NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0187n.06

No. 20-5622

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>May 06, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MARILYN YVETTE COOK, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BOGGS, WHITE, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Marilyn Cook tried to deposit a fake $1 million bill of exchange at Regions Bank. She also claimed a $251,925 tax refund with a doctored return. For those acts, Cook was charged with presenting a fictitious financial instrument, as well as presenting a false claim to the United States. A jury convicted Cook on both counts, and the district court sentenced her within the Guidelines range.

Cook now contests several of the district court's discretionary rulings and the jury's findings. But as "a court of review, not first view," we neither micromanage the district court's exercise of discretion nor substitute our view of the facts for the jury's. *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015). Because the record provides ample support for the district court's decisions and the jury's verdict, we affirm.

**BACKGROUND**

In 2017, Cook brought a $1 million bill of exchange to a Regions Bank branch in Alcoa, Tennessee. The teller ran the bill of exchange through the bank's "panini," a check scanner that, to the teller's eye, looks like a bread machine. The panini could not read the bill of exchange because it lacked magnetic ink coding. So the teller tried to deposit the bill, which purported to be "Non-Domestic," as a foreign document. When that effort also failed, Cook left the bill with Regions for further processing.

Upon inspection, bank employees discovered unusual features on the bill of exchange. The bill displayed a bar code and lacked magnetic ink, unlike an ordinary check. And the word "negotiable" appeared on the bill of exchange as "neogetobile." Bank employees asked Cook about the bill's authenticity. In response, Cook gave inconsistent answers about where she got the money that the bill indicated she controlled. All of this triggered the bank's wealth manager to direct the teller to "put the longest hold possible" on the bill of exchange and to contact the bank's private investigator. The investigator determined that the bill of exchange was fraudulent and called the police.

Cook's legal troubles extended beyond the Regions incident. Around the same time as her attempt to cash the above financial instrument, Cook filed her 2016 tax return, which reported $3 million of income from a Tennessee nonprofit, Sheep Ministries, Inc. (Sheep), for which Cook served as executive director, and $1.5 million in tax paid. Cook claimed a $251,925 refund—the difference between the tax paid and the tax due. But she had not paid $1.5 million in tax. In truth, Cook fabricated her withholdings so the IRS would refund her over $250,000 that she had never paid.

A grand jury indicted Cook for presenting a fictitious financial instrument, in violation of 18 U.S.C. § 514, and for making a false claim to the United States, in violation of 18 U.S.C. § 287. At trial, Cook stipulated that she had previously used the nonprofit Sheep to collect personal information from individuals seeking financial assistance, which she used to file fraudulent claims for tax refunds. A jury convicted Cook on both counts. Following Cook's conviction, the district court imposed a within-Guidelines sentence of 51 months in prison. That sentence, the district court instructed, would run concurrently with any sentence ultimately imposed in an unrelated case pending against Cook in Blount County, Tennessee Circuit Court, and would run consecutively to any sentence ultimately imposed in yet another unrelated case pending against Cook in the United States District Court for the Eastern District of California. Cook now appeals her conviction and sentence. We affirm.

## ANALYSIS

*Sufficiency of the evidence.* Cook first contends that insufficient evidence supports the jury's findings that she presented the bill of exchange "with the intent to defraud," 18 U.S.C. § 514, and that the bill appeared to be a genuine financial instrument. Sufficient evidence supports Cook's conviction if any reasonable juror could have found her guilty beyond a reasonable doubt.

3

*United States v. Howard*, 947 F.3d 936, 947 (6th Cir. 2020). The evidence, in other words, "need not remove every reasonable hypothesis except that of guilt." *Id.* (citation omitted).

Start with the intent argument. Understandably, few advertise their intent to commit fraud. That leaves the government typically to rely on circumstantial evidence to secure a fraud conviction. *Richardson v. Comm'r*, 509 F.3d 736, 743 (6th Cir. 2007); *United States v. Anderson*, 353 F.3d 490, 501 (6th Cir. 2003) (per curiam); *see also Howard*, 947 F.3d at 947 (explaining that circumstantial evidence may sustain a conviction). Circumstantial evidence of intent to defraud comes in many kinds, including conduct designed to mislead or to conceal. *Richardson*, 509 F.3d at 743. Proof that the defendant knew a transaction was illegitimate but acted anyway also supports a finding of fraudulent intent. *See United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007).

From beginning to end, Cook's conduct displayed signs of fraud. Consider first her preparation. Months before presenting the bill of exchange, Cook visited a different Regions branch and put down $1 to open the account in which she would later try to deposit the bill. (The bank ultimately closed the account and returned Cook's dollar.) Her decision to open the account suggests premeditation. When she did present the false financial instrument, Cook assembled an 84-page dossier of supporting documents for Regions. Included in the dossier was an indemnity bond that "look[ed] official" and shared a bond number with the bill of exchange. From these indicators, the government's expert, Jonathan Fraller, concluded that Cook used the bond to "backstop[] the fake Bill of Exchange." A reasonable jury could thus find that Cook sought to conceal the bill's true nature from Regions.

Cook's conduct at the bank also suggested she was engaging in fraud. She claimed her money came from an inheritance before "divert[ing]" conversation away from the source of the funds. And Cook changed the bill of exchange's value from $500,000 to $1 million, claiming she

4

had originally made the bill out for the wrong amount. From this record, a reasonable jury could well discern a conscious effort by Cook to mislead Regions.

Reasonable jurors could also discern an effort by Cook to cover up her wrongdoing. After Regions put a hold on Cook's bill of exchange and contacted the police, she demanded that the bill be returned. When Regions failed to comply, Cook warned a police officer working the case that he faced fines of up to $1 million should he continue to interfere with her "commercial business." Taken as a whole, the government presented sufficient evidence of Cook's intent.

Turning to Cook's next argument, sufficient evidence supports the jury's finding that the bill of exchange appeared to be a genuine financial instrument. By way of background, § 514 prohibits presenting any "false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument." A "fictitious instrument" appears to be "an actual security or other financial instrument" for purposes of § 514 if it contains "enough of the various hallmarks and indicia of financial obligations so as to appear to be within that class." *United States v. Heath*, 525 F.3d 451, 458 (6th Cir. 2008) (citation omitted). Any document that can "credibly hold itself out" as a financial instrument and lacks "disqualifying marks" satisfies § 514. *Id.* (citation omitted). For instance, *Anderson* held that "sight drafts," although fictitious, appeared to be actual financial instruments under § 514 because they contained magnetic ink codes, small characters of a sort often found on checks, colored backgrounds, and watermarks. 353 F.3d at 501.

Cook's bill of exchange contained many features common to legitimate financial instruments. She printed the bill on colored paper with a warning that "this document has security features in the paper." The bill contained a trust account number, check number, amount, date, and signature, all of which are indicia of a legitimate financial instrument. Demonstrating the

bill's apparent authenticity, Regions tried to deposit it, first as a check and later through a "special handling" and collections process used for foreign documents. Those efforts further suggest that the bill of exchange credibly held itself out as genuine. *See Heath*, 525 F.3d at 459 (endorsing jury instructions stating that "[f]ictitious instruments include even bogus instruments that a prudent person might upon consideration be unlikely to accept").

Cook responds by emphasizing three notable errors on her bill of exchange: she misspelled "negotiable" as "neogetobile," included an "autograph" line rather than a signature line, and placed a barcode in the bill of exchange's lower-left corner. These features, she claims, are "disqualifying marks" that remove the bill of exchange from § 514's scope. *Id.* at 458 (citation omitted). A single misspelling, however, does not show that a document is fraudulent. Nor does a barcode or "autograph" line, both of which could in principle appear on a real instrument. And even if the bill of exchange's irregularities attracted doubt, § 514 requires only a "family resemblance to genuine financial instruments." *Id.* (citation omitted). All things considered, Cook cannot carry her "heavy burden" to overturn the jury's verdict. *United States v. Peterson*, 840 F. App'x 844, 851 (6th Cir. 2021) (quoting *United States v. Bailey*, 973 F.3d 548, 564 (6th Cir. 2020)).

*Prior conviction.* The parties stipulated that Cook previously pleaded guilty to making false, fictitious, or fraudulent claims against the United States. Cook argues that her prior false-claims conviction is both inadmissible character evidence under Federal Rule of Evidence 404(b) and unfairly prejudicial under Federal Rule of Evidence 403. Although Rules 403 and 404(b) are analytically distinct, we often discuss them together where the defendant raises both arguments.

*See, e.g.*, *United States v. Dunnican*, 961 F.3d 859, 874 (6th Cir. 2020). Applying this combined approach, prior-act evidence is admissible under Rules 403 and 404(b) if:

> (1) the act took place;
> (2) the proponent offers the act for a proper purpose; and
> (3) the act's probative value is not substantially outweighed by the danger of unfair prejudice.

*United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011).

Here, we confront a divide in this Circuit's decisions assessing whether a district court admitted prior-act evidence for a proper purpose. Some of our cases review that determination de novo, others for abuse of discretion. *See United States v. LaVictor*, 848 F.3d 428, 444–45 (6th Cir. 2017) (collecting cases). Because the result is the same either way, we apply the de novo review standard, which is more favorable to Cook, and leave the dispute over the proper standard for another day. As for Rule 403 balancing, we review for abuse of discretion. *See United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018).

Prior-act evidence is admissible to show intent, but inadmissible to show conformity with a person's bad character. Fed. R. Evid. 404(b). To determine whether a prior act is probative of intent, we consider the act's similarity and temporal proximity to the charged conduct. *LaVictor*, 848 F.3d at 447. Prior-act evidence that suggests a continuing plan or design can be "especially relevant and probative" in fraud cases where a defendant asserts lack of fraudulent intent. *United States v. Tager*, 788 F.2d 349, 353 (6th Cir. 1986).

Cook's past and present frauds both involved the same nonprofit: Sheep. Cook founded Sheep in 2001, purportedly as a ministry that offered financial support to the poor. In truth, Cook was a wolf in sheep's clothing: Through the nonprofit, she collected social security numbers and other personal information from her flock and used that information to file fraudulent tax returns.

Her first § 287 conviction followed. But Sheep lived on, with Cook representing that she remained as executive director. On her 2016 tax return—at issue here—Cook reported $3 million in income from Sheep. And she stated that she had paid $1.5 million in tax and therefore deserved a $251,925 refund. That statement was false.

Cook's use of a nonprofit with which she previously committed tax fraud to prepare yet another false return is probative of her intent to defraud the IRS. And that intent, in turn, both helps to satisfy § 287's knowledge requirement and to rebut any theory that Cook made an innocent tax mistake. Further reinforcing the prior conviction's probative value, Cook targeted the same victim (the IRS) and deployed similar methods (filing false claims for tax refunds) in each instance.

Resisting this conclusion, Cook responds that the conduct underlying her prior conviction happened roughly 15 years before the events of this case—too long ago, she says, to retain probative value. But there is no upper limit on the age of prior acts. *LaVictor*, 848 F.3d at 447. Indeed, we have suggested that even 18-year-old prior acts may be admissible. *See United States v. Love*, 254 F. App'x 511, 517 (6th Cir. 2007); *see also United States v. Jones*, 403 F.3d 817, 821 (6th Cir. 2005) (approving of cases that admitted prior acts over ten years old). To be sure, a 15-year-old prior act may be inadmissible if it bears little resemblance to a defendant's charged conduct. Here, however, similarities between Cook's past and present acts show that her false-claims conviction retains probative force even today.

Nor did the district court abuse its discretion in determining that the prior conviction's probative value was not substantially outweighed by the danger of unfair prejudice. A prior act is unfairly prejudicial, for example, if it "so shocks the conscience" that the jury is likely to think that the defendant is a bad person—and in turn convict her—on that basis alone. *Asher*, 910 F.3d at 861–62. Where the prior act and charged conduct differ, the jury is especially likely to view the

prior act as evidence of bad character. *See id.* at 860–61. Consider *United States v. Hazelwood*, 979 F.3d 398 (6th Cir. 2020). There, the government played recordings of "Hazelwood and his companions mak[ing] absurdly offensive remarks about African Americans and women and laugh[ing] along to a wrenchingly racist and misogynistic tune that they called the 'greasy n****r song.'" *Id.* at 413. This evidence was inadmissible to prove fraud because Hazelwood's racist and sexist acts had little to do with his business practices. *Id.* at 411. At the same time, the evidence posed an "extraordinary risk" that the jury might "judge him for being a bigot." *Id.* at 412–13. Cook's case, by comparison, falls well short of *Hazelwood*. Not only were Cook's offenses less inflammatory than those in *Hazelwood*—fraud, after all, is less likely to evoke the jury's passions than spouting racial epithets—they were also similar to each other. Both her prior act and the charged offense were attempts to obtain tax refunds to which Cook was not entitled.

At the opposite extreme, a prior act may be unfairly prejudicial if the act and charged conduct are so similar that a jury might convict on propensity reasoning alone. *Asher*, 910 F.3d at 862. Cook asserts that this sort of reasoning infected the jury's thinking. Yet she fails to identify such similarities between her past and present conduct. To the contrary, she argues—as she must to maintain her Rule 404(b) argument—that "[t]he factual circumstances of [her] prior conviction and the charges in this case differ significantly." On that score, Cook points out that her prior false-claims conviction arose from falsifying others' taxes; this time she falsified her own. Cook's prior scheme paid off; neither the IRS nor Regions took the bait this time. And the acts happened years apart; the first occurred in 2001 and 2002, while the second took place in 2016 and 2017. Although we disagree with Cook that these factual distinctions dissipate her prior false-claims conviction's probative force, we do find that they reduce the risk that propensity reasoning tainted the jury's verdict.

The district court, to its credit, further mitigated the danger of unfair prejudice by instructing the jury to consider Cook's false-claims conviction "only as it relates to the government's claim on [her] intent," and not "for any other purpose." Of course, jury instructions are not foolproof. But an instruction to consider prior-act evidence only as to intent is more effective where intent is at issue, *see Asher*, 910 F.3d at 862–63, and Cook disputed intent here.

One final point bears noting: Rule 403 balancing involves "assessments of evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 185 (1997). Taking that command into consideration, the lack of direct evidence as to Cook's state of mind increased her prior conviction's probative value compared to the danger of unfair prejudice. For these reasons, the decision to admit evidence of Cook's prior conviction fell within the district court's discretion.

*Jury instructions*. For the charged § 514 offense, the district court instructed the jury that, to convict Cook, it must find she "presented, offered, passed, or attempted to pass the false or fictitious instrument with the intent to defraud." Cook claims that the district court should have defined "intent to defraud" for the jury or, at the very least, issued a good faith instruction. As she failed to preserve this challenge, we apply plain-error review. *United States v. Nicolescu*, 17 F.4th 706, 717 (6th Cir. 2021). For Cook to prevail, she must show that, "taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *Id.* (citation omitted).

We see no plain error in the district court's instructions. "Defraud" means to take wrongfully something that belongs to another "by deceiving them." *Defraud*, Cambridge Dictionary (last visited May 5, 2022). And the phrase "intent to defraud" captures conduct that is "more invidious than mere negligence." *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 807 (7th Cir. 1988). Cook points to the Sixth Circuit pattern jury instructions for fraud-related offenses

10

(but not for a § 514 offense) that define "intent to defraud" to argue that a similar instruction would have been more appropriate here. Yet those instructions, which define "intent to defraud" to require intent to "deceive or cheat," add little to the phrase's ordinary meaning. *E.g.*, Sixth Cir. Comm. on Pattern Crim. Jury Instructions, Pattern Criminal Jury Instructions § 10.01(2)(E) (2021 ed.) (mail fraud). Accordingly, it is difficult to see how the jury instructions were erroneous, much less plainly erroneous.

The instructions on § 514's other elements, moreover, reduced any risk of a miscarriage of justice. *See United States v. Rice*, 449 F.3d 887, 895–96 (8th Cir. 2006); *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 483 (6th Cir. 1999). The district court first told the jury that, to find Cook guilty, it had to find that Cook presented a "false or fictitious instrument with the intent to defraud." Then, the jury heard a lengthy explanation about what instruments are false or fictitious. Finally, the district court told the jury to look at Cook's statements and actions along with other relevant facts and circumstances to assess Cook's intent. By providing the jury with tools to evaluate the bill of exchange and Cook's state of mind, these instructions further undermine her assertion of plain error.

To Cook's mind, jurors would not understand "intent to defraud." As evidence, she cites *United States v. Miller*, which involved a dispute about whether intent to defraud means intent to "deceive *or* cheat" or "deceive *and* cheat." 953 F.3d 1095, 1101 (9th Cir. 2020). Cook, however, claims she intended neither to deceive nor to cheat Regions. Rather, her central defense was that she believed that the $1 million belonged to her. And it is implausible that the jury, having apparently concluded that Cook knew the $1 million belonged to Regions, was nonetheless confused about whether Cook intended to deceive but not to cheat.

11

*Mixed fact and opinion testimony*. Cook next contends that the district court should have excluded Treasury agent Jonathan Fraller's expert testimony because Fraller personally investigated Cook. At the very least, Cook argues, the district court should have cautioned the jury on Fraller's dual fact and expert roles. Cook, however, did not request a cautionary instruction at trial. We therefore review the absence of such an instruction for plain error. Fed. R. Crim. P. 52(b); *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009). To clear that high bar, Cook must identify (1) an error; that is (2) clear or obvious; (3) affected her substantial rights; and (4) "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wheaton*, 517 F.3d 350, 362 (6th Cir. 2008) (citation omitted).

As a general rule, the government may present mixed fact and expert testimony if it specifies which is which or, alternatively, if the district court issues a cautionary instruction. *United States v. Nixon*, 694 F.3d 623, 629 (6th Cir. 2012). In this case, however, Fraller testified almost exclusively as an expert witness. He first described the Redemptionist movement—a collection of tax protesters who believe they can withdraw large sums of money from the Treasury—and Cook's use of Redemptionist methods to make her documents look official. These documents, not Fraller's investigation, anchored the discussion save for one fleeting reference to the fact that Cook does not have a personal $100 million Treasury account. At no point did Fraller discuss his role as investigator in detail. True, Fraller responded "[y]es, there was" when asked if he discovered evidence Cook had a prior conviction. But that historical fact was established in other ways as well—indeed, Cook stipulated to it. Fraller also testified that the IRS told him about Cook and that the investigation started from his office. Yet these statements were elicited only on recross, in response to Cook's own questions. And the district court told jurors that they did "not have to accept Mr. Fraller's opinion" but rather should consider his qualifications and methods to

determine how much weight Fraller's opinion deserved. Those instructions gave jurors "the tools for properly evaluating the opinions in [Fraller's] testimony." *United States v. Pritchett*, 749 F.3d 417, 430 (6th Cir. 2014). And with no other evidentiary errors, Cook cannot establish plain error. *See Vasquez*, 560 F.3d at 470–71.

*Consecutive sentences*. Under 18 U.S.C. § 3584(a), a district court may order a defendant's sentences to run consecutively "[i]f multiple terms of imprisonment are imposed on a defendant at the same time" or if the defendant "is already subject to an undischarged term of imprisonment." Cook asserts for the first time on appeal that § 3584(a) prevents district courts from imposing a sentence consecutive to a future federal sentence. From there, she contends that the district court plainly erred by imposing a sentence consecutive to any sentence ultimately imposed in Cook's then-pending case in the United States District Court for the Eastern District of California.

Her argument, however, has several flaws. As a legal matter, the Supreme Court reserved the issue of whether a district court may impose a sentence consecutive to a future federal sentence in *Setser v. United States*, 566 U.S. 231, 241 n.4 (2012). We did the same in *United States v. Wright*, 841 F. App'x 940, 943 (6th Cir. 2021). *Setser* and *Wright* both suggest that, even if Cook reads § 3584(a) correctly, the district court's error was not "clear under current law," the standard she must satisfy to show plain error. *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). Other circuits have likewise declined to hold that a district court commits plain error by imposing a sentence consecutive to a future federal sentence, reinforcing the conclusion that the proper interpretation of § 3584(a) is neither clear nor obvious. *United States v. Watson*, 843 F.3d 335, 336–38 (8th Cir. 2016) (noting that courts resolving the issue "saw fit to offer substantiative analyses . . . before reaching their conclusions"); *United States v. Ramon*, 958 F.3d 919, 923–24 (10th Cir. 2020); *United States v. Obey*, 790 F.3d 545, 550 (4th Cir. 2015).

13

In any event, Cook's argument has another, more basic problem. While this appeal was pending, Cook, in proceedings before a California district court, pleaded guilty to committing mail fraud. At sentencing, the California district court, while recognizing that the Tennessee district court "doesn't dictate what this Court is doing," still imposed a sentence consecutive to the one here. Transcript of Proceedings at 32, *United States v. Cook*, No. 2:19-cr-00124-TLN-DB (E.D. Cal. Oct. 19, 2021), ECF 56. As a result, Cook would be subject to consecutive sentences no matter what the district court in this case had decided. For the same reason, it is unnecessary to address Cook's related argument that the district court failed to adequately explain its reasons for imposing a sentence consecutive to a future federal sentence.

*Length of the sentence*. Cook's final argument is that her sentence is substantively unreasonable. We review a sentence's substantive reasonableness for abuse of discretion. *United States v. Solano-Rosales*, 781 F.3d 345, 355–56 (6th Cir. 2015). A within-Guidelines sentence is presumptively reasonable. *United States v. Simmons*, 587 F.3d 348, 365 (6th Cir. 2009). Only a showing that the district court weighed the relevant § 3553(a) factors unreasonably justifies vacatur. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

The district court reasonably weighed the relevant sentencing factors to arrive at Cook's within-Guidelines sentence. At the outset, the district court noted that the sentence should "promote respect for the law," one of Cook's "weakness[es]." Next, the district court discussed Cook's personal history, touching on her difficult childhood, unsuccessful first marriage, medical problems including lower back pain and high blood pressure, mental illnesses such as depression, and her education and work history. Details of Cook's present offenses followed, including the fact that Cook planned the Regions fraud for months yet ultimately received nothing from the bank

14

or the government. The district court went on to discuss the gravity of Cook's offenses as well as the failure of deterrence in light of Cook's prior federal and state convictions. We find no error in the district court's comprehensive analysis.

Cook sees things differently. She argues that the district court should have placed more emphasis on her mental illnesses. But the district court discussed Cook's mental health at length, including her diagnoses of "major depression with psychotic features, a depressive disorder, a personality disorder, an adjustment disorder, [and] suicidal ideation," as well as the treatment Cook has received for these conditions. The district court further explained that Cook suffers from personality disorders involving narcissism, paranoia, and antisocial tendencies. And it noted that Cook had been evaluated and found fit to stand trial. Taken as a whole, the record shows that the district court carefully considered Cook's mental health.

Equally unavailing is Cook's contention that the district court placed "too much weight" on her criminal history. Cook is a repeat offender who has committed credit card fraud, mail fraud, presented a fictitious financial instrument, made false claims against the United States (twice), and passed worthless checks (four times). On this record, it is fair to say that the fact that Cook's "criminal history was [a] prominent characteristic at sentencing is merely a reflection of [her] recidivist conduct." *United States v. Benton*, 957 F.3d 696, 704 (6th Cir. 2020).

Lastly, Cook asserts that the district court should have reduced her sentence because her fraud was unlikely to pay off. Where a Guidelines range overstates the culpability of a defendant who concocted a far-fetched scheme with the hope of a major payoff, the district court may depart downwards under the so-called "economic reality" principle. *United States v. McBride*, 362 F.3d 360, 375–76 (6th Cir. 2004). But Cook did not ask the district court for a downward departure and does not argue on appeal that the district court should have granted a departure. Rather, she

15

suggests that the district court could not impose a sentence near the top of the Guidelines range after balancing the § 3553(a) factors.

We disagree. Generally, proper application of the sentencing factors will not overstate a defendant's culpability because those factors include the "nature and circumstances of the offense," the "seriousness of the offense," and the "need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a). Although the district court did not explicitly consider whether the economic-reality principle warranted a lower sentence, the district court considered the § 3553(a) factors here. Recognizing that neither Regions nor the IRS was deceived by Cook's fraudulent documents, the district court nonetheless concluded that Cook's long history of financial crimes—undeterred by previous convictions—justified a sentence at the top of the Guidelines range. *See United States v. McBride*, 434 F.3d 470, 477–78 (6th Cir. 2006) (concluding that the district court properly declined to apply the economic-reality principle because a downward departure "would understate [the defendant's] criminal history, and because [the defendant] had recently made clear to the district court that he intend[ed] to 'disrupt the proper functioning of the government by whatever means he may employ'"). Cook, therefore, cannot establish an abuse of discretion.

## CONCLUSION

For the reasons discussed above, we affirm Cook's conviction and sentence.